No. 90-484

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

Plaintiff and Respondent,

**FILED**

v.

EDWARD CROTEAU,

Defendant and Appellant.

JUN 3 - 1991

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Thiirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Stephen C. Moses, Moses Law Firm, Billings, Montana

For Respondent:

Honorable Marc Racicot, Attorney General, Jennifer
Anders, Asst. Attorney General, Helena, Montana;
Dennis Paxinos, County Attorney, Teresa McCann
O'Connor, Deputy County Attorney, Billings, Montana

Submitted on Briefs:  April 11, 1991

Decided:  June 3, 1991

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The defendant, Edward Croteau, appeals from his conviction on two counts of sexual assault following a jury trial in the Thirteenth Judicial District Court, Yellowstone County. We reverse.

The defendant raises the following issues on appeal:

1. Did the District Court err in admitting prior acts under Rule 404(b), M.R.Evid.?

2. Did the District Court err in giving the State's Jury Instruction No. 1?

3. Did the record contain sufficient evidence to support the defendant's convictions?

4. Was the sentence imposed by the District Court excessive?

On January 13, 1989, the Yellowstone County Attorney's Office moved for leave to file an Information charging the defendant with sexual assault against C.B., a nine-year-old boy. The affidavit in support of the motion stated that on at least five occasions during October and November 1988, Croteau put his hands down C.B.'s pants to fondle his penis while C.B. sat on Croteau's lap, and in this manner caused C.B. to have an erection. The Information was filed on January 17, 1989.

The county attorney filed notices with the District Court and the defendant notifying them that the county attorney intended to introduce evidence of other crimes, wrongs, or acts involving

C.B.'s older brother, R.B., and M.S. Specifically, the notice stated:

> COMES NOW Teresa McCann O'Connor Deputy County Attorney for the County of Yellowstone, State of Montana, and gives notice to defendant of her intention to introduce evidence at the trial of the above-entitled cause of the following other crimes, wrongs, or acts:
>
> a. That as a course of conduct between 1982 and 1985, the defendant did fondle [R.B.], DOB: 9-14-72, and that one specific incident took place in Wyoming in 1982 and another on a trip to Mexico in 1985.
>
> b. That the defendant, between 1985 and 1988, made physical advances toward [M.S.], DOB: 1-25-73, by putting his hand on [M.S.'s] knee, squeezing it and moving his hand up [M.S.'s] thigh. This evidence is being offered for the purpose of showing the defendant's opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in committing the offenses charged.

On August 9, 1989, the State filed an amended Information charging Croteau with two additional counts of sexual assault against M.S. and Z.B., both of whom were less than 16 years of age. The State then filed a second notice of its intention to use evidence of other crimes, wrongs, or acts committed by Croteau against B.W.

On June 20, 1990, the State moved to dismiss Count II of the amended Information, alleging sexual assault against M.S. That motion was granted. The next day, four days before trial, the State issued its third notice of its intention to use evidence of other crimes, wrongs, or acts committed against N.B., J.B., S.C., and T.M. Following a two day trial commencing on June 25, 1990, the jury found the defendant guilty of two counts of sexual assault against C.B. and Z.B.

3

At the time of the alleged offenses, the defendant lived and worked in Billings, Montana. The children in Croteau's neighborhood would often visit his house to play pool and watch television. Croteau had been close friends with C.B. and R.B.'s family for over ten years. On several occasions the children would spend the night at Croteau's house. Croteau also took C.B. and R.B., and other children, on overnight trips.

In November 1988, C.B. told his mother, and later testified at trial, that Croteau had "slobbered on [his] neck" and put his hands down C.B.'s pants while C.B. was sitting on Croteau's lap watching television. C.B. testified that these incidents took place almost every weekend when he visited Croteau during October and November 1988. At trial, C.B. also testified how Croteau made sounds "like a bear growling," rubbed his whiskers against C.B.'s chin, and touched C.B.'s penis until it "would stand up."

C.B. further testified that Croteau's activities ceased in late November 1988 after C.B.'s mother confronted Croteau about C.B.'s allegations at Thanksgiving dinner. Croteau denied ever abusing C.B.

Z.B. testified that he was introduced to Croteau while at an air show with his family in Billings when he was nine years old. Z.B.'s family were also friends of Croteau. After the show, Z.B. and his brother went over to Croteau's house to play pool and watch television. While at Croteau's home, Croteau laid Z.B. on top of his stomach so that Z.B. could feel Croteau's penis. Z.B. testified that Croteau held him there until his penis got hard and

4

then went soft. Croteau repeated the same acts on Z.B. when Z.B. and his brother spent the night at Croteau's house. Z.B. also testified that he spent the night at Croteau's house two or three other times, and on each occasion the same incident occurred. Croteau also denied abusing Z.B.

During the trial, over the defendant's objection, the District Court allowed the State to introduce evidence of other acts of the defendant under Rule 404(b), M.R.Evid. Although the State listed a number of witnesses in its notices, the State only called S.C. and R.B. to testify to other acts of the defendant. Only the "other crimes" testimony of R. B. is at issue on this appeal.

In December 1988, R.B., C.B.'s older brother, gave a statement to the police describing instances of Croteau sexually molesting him. These molestations took place on trips R.B. took with Croteau outside of Billings. R.B. told the police, and later testified at trial, that Croteau fondled his penis on a trip to Mexico in 1982. These acts were described in the State's first <u>Just</u> notice. On June 25, 1990, the day of the trial, the county attorney handed Croteau's counsel a new statement from R.B. dated March 1990. In this second statement, R.B. claimed that Croteau touched and fondled him in Croteau's house. The defendant objected to the admission of testimony concerning incidents occurring at his house, arguing that the State failed to properly notify him under <u>State v. Just</u>. The District Court disregarded Croteau's objection and allowed the testimony.

5

In that testimony, R.B. described a number of fondling incidents while spending the night at Croteau's house. These incidents occurred from the time R.B. was in the second grade until 1987, when he was in the eighth grade. Croteau denied abusing R.B.

## I.

Did the District Court err in admitting other acts under Rule 404(b), M.R.Evid.?

Croteau contends that the District Court should have excluded R.B.'s testimony regarding other acts because the testimony did not meet the substantive and procedural requirements of prior crimes or prior acts evidence as set forth in State v. Just, 184 Mont. 262, 602 P.2d 957 (1979).

The general rule is that evidence of other crimes or prior acts must be excluded. Rule 404(b), M.R.Evid. The reason for this long-standing rule is that prior acts or crimes are highly prejudicial to the defendant, and usually irrelevant for purposes of the charged crime. In State v. Tiedeman, 139 Mont. 237, 242, 362 P.2d 529, 531 (1961), we explained:

> The general rule should be strictly enforced in all cases where applicable, because of the prejudicial effect and injustice of such evidence, and should not be departed from except under conditions which clearly justify such a departure.

Evidence of a defendant's prior acts or uncharged misconduct creates the risk that the jury will penalize a defendant simply for his past bad character. E. Imwinkelried, *Uncharged Misconduct Evidence*, § 1:03 (1984).

However, under Rule 404(b), M.R.Evid., evidence of a defendant's prior acts or prior crimes may be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In Just, we set forth specific procedural requirements which must be followed before prior acts or crimes can be admitted for one of the reasons set forth in Rule 404(b), M.R.Evid.

Croteau's procedural claim of error relates to the notice requirements in Just. In Just, we stated:

> Evidence of other crimes may not be received unless there has been notice to the defendant that such evidence is to be introduced. The procedures set forth in Section 46-18-503, MCA, should serve as guidelines for the form and content of such notice. Additionally, the notice to the defendant shall include a statement as to the purposes for which such evidence is to be admitted.

Just, 602 P.2d at 963-64.

The defendant contends the State violated the notice requirements under Just by failing to notify him that evidence of prior acts occurring at his house would be introduced into evidence. At trial, R.B. testified to several incidents of inappropriate touching while spending the night at Croteau's house. However, in the original Just notice concerning R.B.'s testimony, there is no mention of improper activity occurring at Croteau's house. The notice only stated:

> That as a course of conduct between 1982 and 1985, the defendant did fondle [R.B.], DOB: 9-14-72, and that one specific incident took place in Wyoming in 1982 and another on a trip to Mexico in 1985.

7

The State argues that the phrase "as a course of conduct between 1982 and 1985," covered any incidents that happened at Croteau's house between Croteau and R.B. We disagree. The purpose of the notice requirement is to allow the defendant to prepare for and respond to the allegation of previous conduct. The State's original notice did not further that purpose, and therefore, was insufficient to satisfy the notice requirement under Just.

Despite this lack of notice, the State contends that Croteau was aware of the State's intention to introduce testimony of prior acts occurring at Croteau's house. On the morning of the trial, the State delivered to Croteau's counsel a new statement from R.B. dated March 1990. This statement expanded and changed R.B.'s previous statement to include Croteau's touching and fondling of R.B. in Croteau's house. The State claims this last minute delivery adequately informed Croteau of the State's intent to introduce the testimony. Furthermore, the State claims any prejudice to Croteau could have been cured by Croteau requesting a continuance to familiarize himself with the statement.

In order for Croteau to prepare to defend against prior acts or crimes testimony, the State must give Croteau a timely and specific notice of intent to introduce such evidence. A review of the notice reveals the State's notice was neither timely nor specific. The notice requirement must be given sufficiently in advance of trial to afford a defendant a reasonable opportunity to prepare to meet the evidence against him. That requirement is not satisfied by information delivered on the first day of trial. The

8

State's willingness to consent to a continuance to allow Croteau to review R.B.'s new statement does not cure the State's defective notice and the prejudice to Croteau. It is not acceptable to give the defendant the option of waiving his constitutional right to a speedy trial so that he can deal with the State's untimely notice. The defendant has the right to a speedy trial and proper notice under <u>Just</u>, and cannot be compelled because of untimely notice to choose between the two.

Next, Croteau contends that the State's <u>Just</u> notice was procedurally defective because the State did not specifically state the relevant purpose for admitting the evidence. The notice stated:

> This evidence is being offered for the purpose of showing defendant's opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in committing the offenses charged.

In <u>Just</u>, we explained that "the notice to the defendant shall include a statement as to the purposes for which such evidence is to be admitted." <u>Just</u>, 602 P.2d at 964. Here, the State simply used a "shotgun" approach and named all of the possible reasons, with the exception of motive, set forth in Rule 404(b), M.R.Evid. This type of "shotgun" notice fails to specifically state the relevant reason to admit other acts of the defendant. Recently, in State v. Sadowski, ___ P.2d ___, 48 St.Rep. 93, 96 (Mont. 1991), we explained:

> The State must also demonstrate that the evidence is logically relevant towards one of the Rule 404(b) examples or some other fact in issue and not merely introduced as proof of a character defect or propensity

9

of the defendant in order to show that he acted in conformity therewith. Rule 404(b), M.R.Evid.

In _Sadowski_, the defendant claimed self-defense and the State sought to admit prior acts of the defendant under Rule 404(b), M.R.Evid., to prove the defendant's intent when he shot the victim and to rebut his claim of self-defense. In _Sadowski_, the intent of the defendant was at issue, and prior acts under Rule 404(b) were properly admitted to disprove the defendant's claim of self-defense. In this case, the State did not specify the reason under Rule 404(b) for which the defendant's other acts were logically relevant. The trial court and this Court should not be required to speculate which, if any, of the Rule 404(b) examples stated in the State's notice applies, or was intended to apply, in this case. Future notices which simply incorporate all, or substantially all, of those reasons set forth in Rule 404(b) will not be satisfactory under the _Just_ notice requirements. The notice to the defendant must identify the specific Rule 404(b) purpose for which it is to be admitted.

Accordingly, the State has failed to meet the procedural requirements under _Just_. Failure to adhere to the procedural mandates of _Just_ constitutes error. State v. Case, 190 Mont. 450, 460, 621 P.2d 1066, 1072 (1980); State v. Gray, 197 Mont. 348, 353, 643 P.2d 233, 236 (1982).

Croteau also contends that R.B.'s testimony should have been excluded because it fails to meet the substantive requirements under _Just_. However, the evidence was that much of the conduct

which formed the basis of the charges against the defendant occurred during shared seating arrangements or roughhousing of some type. Prior similar incidents would have been probative to show that the contact was not by accident, and therefore, admissible under Rule 404(b). Here, we reverse because the State did not comply with the procedural safeguards which would have enabled the defendant to adequately prepare for trial and defend himself against claims of prior bad acts.

## II.

Did the District Court err in giving the State's Jury Instruction No. 1?

The defendant contends that it was reversible error for the District court to instruct the jury as follows:

> Where two witnesses testify directly opposite to each other on a material point and are the only ones that testify [on] that same point, you are not bound to consider the evidence evenly balanced or the point not proved; you may regard all the surrounding facts and circumstances proved on the trial and give credence to one witness over the other if you think the facts and circumstances warrant it.

This Court has historically disapproved of this instruction in criminal cases. State v. Jones, 48 Mont. 505, 523-24, 139 P. 441, 448 (1914); State v. Darchuck, 117 Mont. 15, 21, 156 P.2d 173, 175 (1945); State v. Carns, 136 Mont. 126, 139, 345 P.2d 735, 743 (1959). The reason for this Court's disapproval has been that the instruction reduces the State's burden of proof in a criminal case from guilt beyond a reasonable doubt to that applicable in a civil case, which is a preponderance of the evidence. Jones, 139

11

P. at 448; Carns, 345 P.2d at 743. Likewise, we hold the District Court erred in giving the State's Jury Instruction No. 1, and should avoid giving such an instruction during any retrial of this case.

Since the defendant's conviction is reversed and this case is remanded to the District Court for retrial, based on our consideration of Issue No. 1, it is not necessary to consider the last two issues raised by the defendant.

We reverse.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

12