NO. 93-256

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

     Plaintiff and Respondent,

-v-

DANNY A. RAY,

     Defendant and Appellant.

FILED

OCT 06 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Edward McLean, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

     Michael Sol, Sol & Wolfe, Missoula, Montana

     For Respondent:

     Hon. Joseph P. Mazurek, Attorney General, Kathy
Seeley, Assistant Attorney General, Helena, Montana;
Robert L. Deschamps, III, Missoula County Attorney,
Gary L. Henricks, Deputy County Attorney, Missoula,
Montana

Submitted on Briefs: April 14, 1994

Decided: October 6, 1994

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from a Fourth Judicial District Court, Missoula County, jury verdict finding the defendant Danny Ray (Ray) guilty of two counts of solicitation of sexual assault. We reverse and remand for a new trial.

The following are issues on appeal:

I. Did the District Court abuse its discretion when it admitted testimony of prior acts?

II. Was the evidence presented insufficient to convict the defendant of two counts of solicitation of sexual assault?

III. Was the jury instruction on solicitation given in the second trial improper?

IV. Did the District Court err in admitting the testimony of the two expert witnesses who were not identified as experts prior to trial?

V. Was cumulative error committed in the instant case?

FACTUAL BACKGROUND

Ray has resided in the West Riverside neighborhood of East Missoula since about 1971. He also has a shop in the area which contains a second hand store and work shop where he builds furniture. Ray is well known by most of the families in the neighborhood. He has employed several persons from the area to build furniture in the shop and in the past many children would visit him, play at the shop or help with simple tasks. There was considerable testimony during the trial that Ray would assist families and children in the neighborhood who needed loans,

furniture, clothing and other items.

Ray would load some of the furniture he built and take it to Spokane to sell. In about 1989, he started to take a neighborhood man who was working for him building furniture, on the trips to Spokane. Two or more children would generally accompany the men on these trips. At some point, Ray's employee, Mike Triplett, stopped going on trips to Spokane but the children, generally girls, continued to accompany Ray.

J.E., one of the girls who often accompanied Ray on the trips, testified at trial that when she and A.D. accompanied Ray, the defendant would drive as far as Coeur'd Alene, Idaho, rent a motel room with one bed and the girls would sleep in the bed with him. She testified that when she slept in the bed with him, he would touch her in her private area underneath her clothing and put his fingers inside her.

Additionally, A.D. testified that Ray would touch her on her breasts and her private area. She stated that sometimes he would touch her breasts on top of her clothing and sometimes underneath her clothing. She further testified that when he touched her private parts, he would touch her on the inside of her clothes.

The two girls also testified that Ray would take them to the skating rink or zoo while they were in Spokane. Additionally, they related that Ray would take them shopping and buy them clothing and other items while they were on their trips. J.E. testified that she did not know whether the gifts were a reward for going to Spokane, but A.D. did feel that the gifts were for accompanying Ray

3

to Spokane.

M.C. testified that she and her friends would ride with Ray in his tan pickup. She stated that when he would shift gears he would drop his hand on her leg and rub her leg. She further reported that he would put his hands around the top of her body to take her down from the truck although she did not think it was necessary. She also testified that he touched her on the bottom once when they were on their way to a party and the wind was blowing and he kept pushing her skirt down.

Other facts will be provided as necessary in the body of the opinion.

PROCEDURAL BACKGROUND

The original information was filed on May 13, 1991, charging Ray with one count of solicitation of sexual intercourse without consent. An amended information was subsequently filed charging Ray with solicitation of sexual assault. A not guilty plea was entered and trial was held on March 19 and 20, 1992. That resulted in a mistrial when the jury could not reach a verdict in the case,

A motion was filed on March 31, 1992, for leave to file an amended information charging Ray with two counts of solicitation of sexual assault and one count of sexual assault. The motion was granted on March 31, 1992. On April 7, 1992, a motion for leave to file a second amended information was filed and the court granted the motion on the same day. The second amended information contained one count of tampering with witnesses.

A second trial was held on December 14 and 15, 1992. The jury

4

found Ray guilty of two counts of solicitation for sexual assault and acquitted Ray of the one count of sexual assault.

OPINION

I. PRIOR ACTS

Did the District Court abuse its discretion when it admitted testimony of prior acts?

Ray argues that evidence of prior acts was improperly admitted. The State alleged that a person not a victim in the charged conduct, S.E., was sexually assaulted by Ray approximately 16 to 18 years ago. Ray asserts that the acts were not sufficiently similar, were too remote in time and their probative value was outweighed by their prejudicial effect. The State counters that the other acts about which S.E. testified were sufficiently similar to the charged conduct and not too remote in time. Moreover, the prior acts were properly admitted to show motive, mental state, and common scheme and their probative value outweighed any prejudice to the defendant.

The standard of review for evidentiary rulings is whether the District Court abused its discretion. State v. Crist (1992), 253 Mont. 442, 445, 833 P.2d 1052, 1054. On review, we will apply the modified Just rule, established in State v. Matt (1991), 249 Mont. 136, 814 P.2d 52.

Matt sets forth the basis for admission of evidence of prior acts as follows:

(1) The other crimes, wrongs or acts must be similar.

(2) The other crimes, wrongs or acts must not be remote in time.

5

(3) The evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character, but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(4) Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Matt, 814 P.2d at 56.

A key concern with the admission of prior acts in the instant case is the fact that the prior act occurred approximately 16 to 18 years before the charged conduct. This raises the issue of whether the prior acts are too remote in time and therefore violate the second requirement of the modified Just rule. We are guided in our decision by previous case law which leads us to conclude that the prior acts at issue here are simply too remote to the charged conduct.

In State v. Tecca (1986), 220 Mont. 168, 714 P.2d 136, we concluded that an isolated incident nine years before the charged conduct would be too remote in time, but because there was a continuing course of conduct any remoteness problem was alleviated. We also stated that we would not establish any arbitrary time limit for admitting prior acts where such a cut-off would exclude probative evidence. Tecca, 714 P.2d at 139. See also Crist, 833 P.2d at 1055.

In the present case, the prior acts took place between 16 and 18 years before the conduct charged. Although the State included intervening acts in its amended notice of intent to introduce

6

evidence of other acts, only one of the complainants involved in those other acts, M.C., testified at trial. That particular other act was also charged in the amended information in the count alleging sexual assault. M.C. was named as the victim. M.C. testified at the trial, and subsequent to her testimony, Ray made a motion to dismiss the count of sexual assault because he believed her testimony did not indicate any intentional sexual assault. Th? trial judge stated that he did not believe that the jury would return a guilty verdict on that particular count and if it did, he would seriously consider the motion to dismiss the count at that point. The jury did, in fact, acquit Ray of that charge. M.C.'s testimony was, thus, for all intents and purposes, discounted by the jury and the trial court. Accordingly, there are no intervening acts which could constitute a continuing course of conduct between the time of the incidents 16 to 18 years ago, and the charged conduct.

Although we continue to decline to set arbitrary time limits for admitting prior acts evidence, we hold that the two prior acts to which S.E. testified at issue here and which occurred 16 to 18 years ago, without other intervening acts which would show a continuing course of conduct, are simply too remote and do not meet the second requirement of the modified Just rule established under Matt.

Moreover, the fourth requirement of the modified Just rule, whether the probative evidence is outweighed by the danger of unfair prejudice, also cannot be satisfied. The evidence of prior

7

acts admitted in the second trial, so remote in time, was prejudicial. State v. Croteau (1991), 248 Mont. 403, 812 P.2d 1251, discusses the general policy to exclude evidence of other acts:

> The general rule is that evidence of other crimes or prior acts must be excluded. Rule 404(b), M.R.Evid. The reason for this long-standing rule is that prior acts or crimes are highly prejudicial to the defendant, and usually irrelevant for purposes of the charged crime. In State v. Tiedemann (1961), 139 Mont. 237, 242, 362 P.2d 529, 531, we explained:
>
> "The general rule should be strictly enforced in all cases where applicable, because of the prejudicial effect and injustice of such evidence, and should not be departed from except under conditions which clearly justify such a departure."
>
> Evidence of a defendant's prior acts or uncharged misconduct creates the risk that the jury will penalize a defendant simply for his past bad character.

Croteau, 812 P.2d at 1253. (Citations omitted.)

In the instant case, the trial court, during the course of the first trial, denied the State's motion to admit evidence of the same prior acts "[b]ecause the prejudicial effect of admitting evidence of an isolated incident that occurred fifteen years prior to the charged crime is likely to result in an emotional response from the jury and because the probative value is in question..." We agree that there is a high probability the jury could have penalized the defendant simply for his past bad character. The fourth requirement of the modified Just rule cannot be satisfied either. Therefore, we conclude that the evidence of prior acts was improperly admitted.

We hold that the District Court erred in admitting the

evidence of prior acts of the defendant and, accordingly, we reverse the District Court on this issue and remand for new trial. For the guidance of the court and counsel on retrial, however, we will address the remaining legal issues raised by the defendant.

## II. SUFFICIENCY OF EVIDENCE

Was the evidence presented sufficient to convict the defendant of two counts of solicitation of sexual assault?

Since we are remanding for new trial on the basis of our discussion in Issue I, it will, obviously, be up to the next jury to determine the guilt or innocence of Ray on the basis of whatever evidence is submitted at retrial. In his argument on appeal on this Issue and on Issue III, however, Ray contends, that, apart from the other crimes evidence, the evidence of his conduct in Montana as regards J.E. and A.D., is not directly related to the underlying offense of solicitation of sexual assault, is capable of different interpretations, is otherwise innocent and, therefore, cannot, as a matter of law, sustain a conviction for solicitation. Ray contends that the evidence adduced at trial was insufficient to support a conviction for solicitation of sexual assault.

In arguing for a narrower interpretation of the scope of conduct which may be sufficient to prove solicitation, Ray suggests that:

> ... under our case law . . . anything a criminal does to make the commission of his own crime "easier or less difficult" can be classified as "solicitation." To suggest that this is perhaps an overbroad reading of what the legislature intended to do, is certainly supported by the realization that anything a criminal does can be interpreted as making his crime easier: getting up in the morning, for example. . . .

9

The State insists that, under our prior cases, there was sufficient evidence to establish Ray's facilitation of the sexual assaults in Idaho, by his actions in Montana, and that his conviction should stand.

The evidence presented to establish Ray's facilitation of the sexual assaults included his promises of gifts if the girls went to Spokane and the subsequent purchase of gifts of clothing and other items for the children involved in the solicitation allegations. At the time the offenses occurred Ray was over forty years old and the two minor girls were ages nine and eleven.

J.E. testified that Ray offered to buy "clothes and stuff" if the girls would go to Spokane and that he did, in fact, buy clothes and other items if the girls would accompany him. She also testified that she did not know whether the clothes and other items were a reward for going to Spokane. She further testified that he stated that they would get more clothes if they went to Spokane alone because if he took two people, he could not buy as many clothes. A.D. testified that Ray did buy her gifts as a reward for going to Spokane. However, A.D. also testified, when asked if she ever believed that if she did not go to Spokane, she would not get "things": "[c]ould be a couple times." Ray's attorney then asked, "[c]ould be, but was there?" A.D. stated, "No." Ray conceded that. the girls knew they would receive gifts if they accompanied him to Spokane.

There was testimony by both girls that when they went to Spokane, they generally would stop in Coeur'd Alene, Idaho, and.

10

stay overnight in a motel. There was usually only a single bed and Ray and the girls would sleep in the same bed. The girls testified that when they slept in the bed with him, he would touch their breasts and private parts. The State contends **that the** jury could infer from the above facts that the defendant "induced the girls to spend nights alone in a motel room with him by offering to drive them out of state and buy tbem gifts in Spokane."

However, although there was testimony that Ray did buy gifts for the children involved in the instant case, there was also testimony that he purchased gifts for other children in the neighborhood, including the siblings of the girls involved in the instant action. Additionally, there was testimony that he helped out area families, including the families of the children involved in the allegations. Ray would loan money to the families when necessary and assist in the purchase of furniture and other necessities for the household. There was testimony that he would assist the families and children of the neighborhood with material items because he, himself, had a very poor childhood.

Ray was charged with and was prosecuted in Montana for inchoate offenses of solicitation, i.e. for **"... command[ing], encourag[ing]** or **facilitat[ing]...,"** in Montana, the commission of two sexual assaults in Idaho. Section 45-4-101, MCA. Montana's jurisdiction to prosecute Ray derives from our statute which allows this State to charge and to prosecute **"...** conduct within [Montana which] constitutes . . . solicitation . . . to commit in another jurisdiction an offense under the laws of [Montana] and such other

jurisdiction." Section 46-2-101(1)(c), MCA; Ray was not charged with nor was he prosecuted for the actual sexual assaults in the state of Idaho; any such prosecution would, necessarily, have to be conducted in that state.

Montana's offense of solicitation is set forth at § 45-4-101, MCA, and, in pertinent part, provides:

> Solicitation. (1) A person commits the offense of solicitation when, with the purpose that an offense be committed, he commands, encourages, or facilitates the commission of that offense.

The scope of conduct made criminal by Montana's solicitation statute is more expansive than either the common law inchoate offense or the Model Penal Code provision from which our statutory offense was derived. State v. Bush (1981), 195 Mont. 475, 479, 636 P.2d 849, 851. In State v. Sage (1992), 255 Mont. 227, 841 P.2d 1142, we stated that:

> Montana adopted its solicitation statute from the Illinois Criminal Code of 1961. When Montana adopted it, the Illinois statute read, "A person commits solicitation when, with intent that an offense be committed, he commands, encouraaes or requests another to commit that offense." When the Montana Legislature adopted the statute in 1973 it changed the language. The legislature has not changed the statute since its enactment. The Montana version states, "A person commits the offense of solicitation when, with the purpose that an offense be committed, he commands, encouraaes or facilitates the commission of that offense."
>
> By modifying the statute, the legislature broadened the types of conduct which are criminal under the solicitation statute. § 45-4-101, MCA, (Emphasis added.)

Sage, 841 P.2d at 1143. (Citations omitted.) The range of conduct which might be used to prove the commission of that offense is best illustrated by reference to the facts of Sage and Bush.

12

In *Sage*, the defendant was charged with and convicted of solicitation to commit incest. In that case, the defendant repeatedly asked his daughter to "fool around" with him in a sexual manner. Moreover, he cut a peep hole in the bathroom wall so he could watch her. He also installed a video camera so he could videotape her in the bathroom. In *Sage* the defendant's acts were unequivocal, capable of only one reasonable interpretation and purpose and directly tended to command, encourage or facilitate the commission of the offense of incest. The acts themselves were sexual in nature. *Sage*, 841 P.2d at 1142.

In *Bush*, however, the defendant's conviction of the offense of solicitation to possess dangerous drugs was affirmed on the basis of proof of conduct which was much less directly and unequivocally related to the underlying offense and which, as in the instant case, involved conduct both within and without Montana that was, without reference to the underlying crime, capable of being interpreted as innocent and not culpable.

In that case the defendant, pretending to be a film maker who photographed animals, solicited and, ultimately, retained Kohse, a bartender, to be a film courier. Kohse was sent to Los Angeles where she was then advised that she was going to, instead, be a photographer, notwithstanding that she had no experience in photography. She was minimally instructed in the use of photographic equipment given to her by Bush and was then sent to Peru to photograph zoo animals. She was contacted there by a person named Dan, who took her to the zoo, left her there for

13

several hours to photograph animals, but took her camera case. On her return to the United States, customs agents discovered cocaine hidden in a compartment in the lining of the camera case. Kohse disclaimed any knowledge of how or when the drug was placed in the camera case or who put it there.

In affirming his conviction of solicitation, we rejected Bush's argument to the contrary and concluded that evidence of events occurring outside the State of Montana were relevant to show his mental state or purpose to commit the offense of solicitation in Montana. Bush, 636 P.2d at 851. Moreover, we held that the word "facilitate" was not vague but was commonly understood to mean "to make easier or less difficult: free from difficulty or impediment," and that "[i]n all cases, the actor must have the purpose of promoting the commission of an offense." Bush, 636 P.2d at 852. We also stated that it was irrelevant that the person solicited did not know of the criminal purpose of the solicitation or of the criminal nature of the conduct solicited. Bush, 636 P.2d at 852.

As with Bush, the activities of the defendant upon which the charges of solicitation of sexual assault are based in the instant case, while capable of more than one interpretation and while, in and of themselves, arguably innocent, are, nevertheless, legally sufficient to sustain a conviction for that offense when viewed in the context of defendant's conduct in the state of Idaho. While Ray is not charged with nor can he be convicted of the actual sexual assaults in Idaho, his conduct there, is, nonetheless,

14

relevant in the proof of the crimes of solicitation with which he is charged in Montana. Bush 636 P.2d at 851. Such conduct establishes his mental state and his purpose of promoting in Montana, the commission of the offenses of sexual assault in Idaho.

The promise of or provision of gifts to poor children and the assistance of families in need, without more, is innocent and not. culpable conduct. Furthermore, such conduct, unlike the defendant's acts in Sage, is clearly not sexual in nature. Nevertheless when such conduct is examined in the context of Ray's repeated trips to Spokane where he spent his nights in a motel room in Idaho, in a single bed, allegedly sexually assaulting the two minor girls, who he had encouraged to make the trip with him, the true purpose behind his otherwise innocent conduct in Montana becomes clear.

The standard of review for determining the sufficiency of the evidence in a jury trial is:

> [W]hether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (Emphasis added.)

State v. Keys (1993), 258 Mont. 311, 319, 852 P.2d 621, 626. We conclude that a rational trier of fact could, beyond a reasonable doubt, infer that Ray's conduct in Montana was for the purpose of inducing the girls to accompany him to Spokane and for the purpose of facilitating the commission of the sexual assaults which he allegedly committed in Idaho against the minors.

In resolving the legal issue raised by the defendant and in addressing his arguments on appeal, we hold simply that the

evidence used to prove solicitation of sexual assault in this case was legally sufficient. Whether the next jury determines that such evidence, if admitted, is sufficient to sustain a conviction is, of course, solely within the province of that finder of fact.

### III. JURY INSTRUCTIONS

Was the jury instruction on solicitation given in the second trial improper?

Ray asserts that the jury instruction provided by the District Court in the second trial was not correct nor was it necessarily clear to an ordinary jury. The State claims that the instruction given at the second trial is the proper statement of the law. We agree that the jury instruction provided at the second trial is the proper statement of the law and was properly given.

The jury instruction given at the first trial stated:

> A person commits the offense of solicitation when, with the purpose that the offense of sexual assault be committed, he encourages or facilitates another to commit the crime of sexual assault.
> ....

However, in the second trial, the following jury instruction was given:

> A person commits the offense of solicitation when, with the purpose that the offense of sexual assault be committed, he commands, encourages or facilitates the commission of that offense.

The jury instruction given in the first trial was an incorrect statement of the law. It was based on the general definition of solicitation, § 45-2-101(62), MCA. However, the crime of solicitation provides a more specific definition for solicitation, and provides that a person commits the offense of solicitation when

16

he commands, encourages or facilitates the commission of that offense. Section 45-4-101, MCA. The second jury instruction, therefore, is the correct statement of the offense of solicitation in Montana, and was properly given. We hold that the District Court did not commit error when it gave jury instruction 17 in the second trial.

IV. EXPERT TESTIMONY

Did the District Court err in admitting the testimony of the two expert witnesses who were not identified as experts prior to trial?

Ray also argues that two expert witnesses were not properly identified. The State contends that they were identified but were not identified as experts in the amended information filed on March 31, 1992, and the second amended information filed on April 7, 1992. The State conceded that the expert status of the witnesses and a summary of their anticipated testimony should have been provided to Ray. However, the State also asserts that prejudice must be shown when there has been a violation of discovery, citing State v. Forsyth (1988), 233 Mont. 389, 412, 761 P.2d 363, 377.

Section 46-15-322(1), MCA provides:

(1) Upon request, the prosecutor shall make available to the defendant for examination and reproduction the following material and information within the prosecutory's possession or control:
(a) the names, addresses, and statements of all persons whom the prosecutor may call as witnesses in the case-in-chief:
. . .
(c) all written reports or statements of experts who have personally examined the defendant or any evidence in the particular case, together with the results of physical examinations, scientific tests, experiments, or

17

comparisons....

Moreover, the Omnibus order stated that:

1. The State shall immediately, and on a continuing basis :
a. Disclose the names of the State's witnesses (including experts), their statements, or a short summary of their anticipated testimony if no statement exists.
b. Disclose and make available for inspection all physical or documentary evidence in the State's possession.

The trial occurred on December 14 and 15, 1992. The State had previously listed the two witnesses at issue, but had not revealed that they were to testify as experts nor did it provide any statement of their prospective testimony. Although the State was in clear violation of § 46-15-322(1), MCA, and the Omnibus Order, Ray had over eight months to investigate the testimony of the two witnesses, and there is no evidence that he made any attempt to ascertain their status in the case or their potential testimony.

Because we reverse this case upon Issue I, we will not address the effect of the State's violation of the rules of discovery upon this case other than to note that the State was at fault in not disclosing the status of the two experts and in failing to provide their statements to the defense but that the defendant's claims of prejudice ring somewhat hollow given his failure to ascertain the status and testimony of the two witnesses whose identity he knew for over eight months prior to the trial.

## V. CUMULATIVE ERROR

Was cumulative error committed in the instant case?

Finally, Ray claims that this case should be reversed because of cumulative error in the trial process. The only error we have

18

found in this case is the admission of the prior acts evidence. Accordingly, Ray's arguments of cumulative error are without merit.

We note that although Ray was charged in the second amended information with one count of tampering with witnesses, this count was not tried before the jury and we cannot find any indication in the record as to the resolution of that count.

REVERSED AND REMANDED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

19

Justice Terry N. Trieweiler specially concurring in part and dissenting in part.

I concur with the majority's conclusion that the District Court abused its discretion when it admitted evidence of defendant's conduct which occurred 16 to 18 years prior to trial. I also concur that based on that error alone, defendant is entitled to a new trial.

However, I dissent from the majority's conclusion that there was sufficient evidence of conduct by defendant to support his conviction for solicitation in the State of Montana. Defendant committed no crimes in Montana. However, the majority opinion stretches the law regarding solicitation beyond recognition to facilitate defendant's trial in Montana for crimes committed in the State of Idaho. The charges brought against defendant in the District Court of the Fourth Judicial District should have been dismissed and charges for defendant's actual offenses should have been filed in Idaho, where those offenses occurred.

The majority opinion states that because defendant made promises to his victims in Montana that he would do things for them in Washington, he thereby facilitated the commission of sexual assault involving those victims in the State of Idaho. However, even conceding that Montana's solicitation statute found at § 45-4-101, MCA, is the broadest such statute in the country, and that it includes language which has nothing to do with solicitation, as that term is commonly understood, there is still

20

no proof of any unlawful conduct on the part of defendant which was committed in Montana.

In *State v. Bush* (1981), 195 Mont. 475, 479, 636 P.2d 849, 852, we held that:

> "Facilitate" is a commonly understood word. Its definition according to Webster's Third New International Dictionary is 'to make easier or less difficult: free from difficulty or impediment.* In all cases, the actor must have the purpose of promoting the commission of an offense.

In this case, the majority's theory is that because defendant made promises to his victims in Montana that he would perform favors for them in Washington, those promises "facilitated" the commission of sexual assault on his victims in Idaho. However, there is no support for that conclusion in the record before the trial court.

J.E. testified that she did not know if the things defendant purchased for her in Washington were a reward for traveling with him. She testified that she traveled with defendant because some of her friends did so and she wanted to go along with them. Similarly, she testified that she hung around defendant's shop because it was fun to do so. Finally, she testified that she received gifts from defendant whether she went to Spokane or not, and that other families were given gifts, even though none of their children went to Spokane. She established no relationship between the promises, which the majority concludes are the basis of defendant's offense, and trips to Spokane.

21

Likewise, A.D., defendant's second alleged victim, did not testify that she traveled to Spokane with defendant because of any promises made by him to her or anyone else. She testified that she went to Spokane with defendant "because my family thought he was really nice and so did I."

There was absolutely no other testimony given by either of defendant's alleged victims which connected any of his conduct in Montana to the crimes he is accused of committing in Idaho.

When the majority opinion is distilled to its essence, it is that Montana's statute prohibiting solicitation is so broad and all-encompassing that a defendant can be tried and convicted of a felony in Montana punishable by up to 20 years in prison and a $50,000 fine for being "really nice." Surely, any statute that can be so construed lacks sufficient specificity to give fair notice of the conduct which is prohibited and will lead, as it did in this case, to arbitrary and discriminatory arrests. Such a statute is unconstitutionally vague and violates the due process clause of the Fourteenth Amendment to the United State Constitution. *See Grayned v. City of Rockford* (1972), 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222.

In this case, defendant was tried, convicted, and sentenced based purely on acts he is accused of committing in the States of Idaho and Washington. Montana's solicitation statute was merely a subterfuge to enable this State to punish defendant for conduct over which it had no jurisdiction. While the allegations made

22

against defendant suggest conduct that was reprehensible, the appropriate place to charge, try, and punish defendant is the state where that conduct occurred--not Montana.

_____
                    Justice


Justice William E. Hunt, Sr., joins in the foregoing concurrence and dissent.

_____
                    Justice

23