No. 92-232

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

      Plaintiff and Respondent,

v.

MILTON LEE KEYS,

      Defendant and Appellant


APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

            Edmund F. Sheehy, Jr., Cannon & Sheehy,
            Helena, Montana

      For Respondent:

            Hon. Marc Racicot, Attorney General, George
            Schunk, Assistant Attorney General, Helena,
            Montana; Patrick L. Paul, Cascade County
            Attorney, Steven M. Hudspeth, Deputy
            County Attorney, Great Falls, Montana


Submitted on Briefs: November 19, 1992

Decided: May 18, 1993

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Defendant Milton Lee Keys appeals from the judgment and verdict of the Eighth Judicial District Court, Cascade County, convicting him of the crime of sexual intercourse without consent, pursuant to § 45-5-503, MCA. On February 4, 1992, the court sentenced Keys to 15 years in the Montana State Prison, with three years suspended.

We reverse.

The following issues are presented on appeal:

1. Did the District Court abuse its discretion when it admitted evidence of a prior, uncharged incident of sexual misconduct by Keys in the trial for sexual intercourse without consent?

2. Did the District Court's refusal to allow reference to prior misconduct evidence during opening statements deprive Keys of his right to a fair and impartial trial because Keys had no opportunity to minimize the impact of the evidence before the jury heard testimony about Keys' misconduct?

3. Was the evidence presented by the State during the trial inherently incredible and insufficient to support the guilty verdict?

On August 3, 1990, Keys was charged by information with the offense of sexual intercourse without consent, a felony, in violation of § 45-5-503, MCA. At trial, there was no dispute that Keys had knowingly engaged in sexual intercourse with the victim,

N.B. The sole issue in dispute was whether or not N.B. had consented.

On the evening of July 31, 1990, N.B., who was 18 years old at the time, met Keys at TJ's Lounge in Great Falls. N.B. asked the bartender, who was an acquaintance of hers, for a ride home. When Keys overheard this, he offered to give her a ride and she accepted.

The two of them left the bar in Keys' vehicle and headed toward N.B.'s home. Keys stopped the car after turning off of Tenth Avenue South, and began kissing N.B. N.B. stated that she thought Keys would resume driving but he instead continued to make sexual advances over her objections. Thereafter, Keys climbed across the seat and, according to N.B.'s testimony, forced her to have sexual intercourse. N.B. testified that she struggled throughout the incident but the car was very confining and she was unable to do anything to stop Keys. Finally, when the assault ended, N.B. was able to get out of the car and immediately went to a nearby house where she notified the police that she had been raped.

While en route to meet with N.B., the police officer who was dispatched to investigate the alleged crime saw a vehicle parked near the crime scene which resembled the description she had been given of the suspect's vehicle. The officer observed the driver, later identified as Keys, searching for something on the ground and in the car. When the officer asked Keys what he was doing, he claimed he was looking for his wallet which he had lost when he

dropped off a male friend at this spot. Although the officer had not yet made mention that she was investigating a possible rape, Keys later admitted he lied when approached by the police officer because he was afraid he might be charged with rape and did not know the age of consent in Montana. After confirming that Keys fit the description of the alleged assailant, the officer placed Keys under arrest and took him to the house where N.B. identified him.

The next day Keys was taken to the hospital for the purpose of gathering samples of his hair, saliva, and blood. While at the hospital Keys told another police officer that he and N.B. had been with another male and female when they left TJ's and had not been alone in the car. In a later videotaped interview, Keys again told the investigating officers that two females and a male were with him at the time of the alleged incident. At trial, Keys acknowledged that he had lied on both these occasions because, in his words, "I was hoping I would let her [N.B.] think that I had somebody to back up a story for me . . . and she would tell them that nothing really happened. It didn't work out that way."

Keys did not deny having intercourse with N.B., but claimed that she had willingly participated. The case was tried before a jury which found Keys guilty of the crime of sexual intercourse without consent, and the court imposed a 15-year sentence, with three years suspended. Keys appeals.

The dispositive issue in this appeal is whether the District Court properly admitted evidence about a prior incident of sexual misconduct by Keys.

4

Prior to trial, the State served Keys with notice of the State's intent to offer evidence of "other crimes, wrongs, or acts," to prove Keys' motive and intent. Keys filed a brief in opposition to the introduction of this evidence, but on January 27, 1992, the court ruled that this evidence would be admissible. The evidence consisted of testimony by another woman, P.B., who had met Keys a month earlier at the Flamingo Lounge in Great Falls. P.B. testified that she talked with Keys and danced with him several times. As she was leaving the Flamingo, Keys told P.B. that he would like to speak with her outside. She testified that Keys walked out of the bar ahead of her, and when they got outside, Keys turned around with the zipper of his pants down and his penis exposed. He then twice told P.B., "I want to fuck your socks off." P.B. reacted angrily, and when she threatened to call the police, Keys apologized and left her alone. During the trial, when Keys was on the stand and testified about this incident, he admitted that it occurred the way P.B. had described. He characterized his actions as "being basically rude," and said that he was stupid for having done this.

Keys argues that the court erred in allowing admission of this evidence because it had no relevance to the issue of whether N.B. consented, and did not meet the requirements of Rule 404(b), M.R.Evid. The State counters by arguing that the evidence was relevant because it was highly probative of Keys' motive and intent to commit sexual acts against nonconsenting female victims.

5

The standard for review of evidentiary rulings is whether the district court abused its discretion. *State v. Crist* (1992), 253 Mont. 442, 833 P.2d 1052; *State v. Sadowski* (1991), 247 Mont. 63, 805 P.2d 537. The district court has broad discretion to determine whether or not evidence is relevant and admissible, and absent a showing of an abuse of this discretion, the court's determination will not be overturned. *Crist*, 833 P.2d at 1054.

In Montana, the admissibility of evidence of other crimes, wrongs, or acts ("prior acts evidence") is controlled by Rule 404(b), M.R.Evid., which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We have stated that the general rule of Rule 404(b) must be strictly enforced except where a departure is clearly justified, and exceptions to the rule must be carefully limited. *Crist*, 833 P.2d at 1054; *State v. Just* (1979), 184 Mont. 262, 271-72, 602 P.2d 957, 962. In order to insure that prior acts evidence is not used as character evidence, this Court has outlined four substantive criteria for the admission of such evidence. *State v. Matt* (1991), 249 Mont. 136, 814 P.2d 52. This rule, which is a modification of the rule originally developed in *Just*, 602 P.2d at 961, requires that:

1. There is a similarity between the crime charged and the previous crime, act, or wrong;

6

2. The other crime, act, or wrong must not be remote in time;

3. The evidence of other acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character; but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; and

4. A determination that the probative value of the evidence is not substantially outweighed by the danger of prejudice to the defendant.

In *Matt*, we also clarified that in addition to satisfying these criteria for admissibility, a party offering such evidence must comply with the procedural requirements originally set forth in *Just*. In this instance, we first point out that the parties do not dispute that the appropriate procedural precautions were taken. The defendant received proper notice; the trial court admonished the jury at the introduction of the evidence; and the trial court instructed the jury in its final charge on the purpose of the evidence.

The only question in this case is whether a single instance of sexual misconduct, which the State characterized as indecent exposure and assault, was admissible to prove that the sexual intercourse with N.B. occurred without her consent. The State contends that the evidence goes to prove Keys' motive and intent, and that the requirements of the modified *Just* rule, as announced in

7

*Matt*, have been satisfied. Although we concede that the incident with P.B., which occurred only a month before the alleged crime, satisfies the requirement that the prior act not be remote in time, we conclude that this is the only one of the modified *Just* criteria which is met and that the offered evidence fails to meet the requirements for admissibility in every other respect. The mere fact that the incident with P.B. occurred near in time to the alleged crime is not sufficient to overcome the factors which weigh against admissibility.

The State argues that the indecent exposure incident is sufficiently similar to the charge of sexual intercourse without consent because both acts were illegal and sexual in nature, and were directed toward nonconsenting female victims. Citing *State v. Gilpin* (1988), 232 Mont. 56, 64, 756 P.2d 445, 449, for the proposition that "[i]t is not necessary that the prior acts and the charged offense be identical," the State presents examples of prior acts evidence which has been held admissible even though there have been substantial differences between the charged crime and the prior conduct.

Admittedly, in several cases we have held that prior acts evidence meets the similarity standard even though the acts have been quite dissimilar from the actual crime being charged. *See, e.g., Sadowski*, 805 P.2d 537 (apparent suicide attempt and pointing a gun at a deputy held sufficiently similar to deliberate homicide); *State*

8

*v. McKnight* (1991), 250 Mont. 457, 820 P.2d 1279 (sexual assault held similar to sexual intercourse without consent); *State v. Gambrel* (1990), 246 Mont. 84, 803 P.2d 1071 (prior uncharged sex crimes admissible in deliberate homicide trial); *State v. Wurtz* (1981), 195 Mont. 226, 636 P.2d 246 (overruled on other grounds) (intimidation threats made from auto similar to sexual assault against a different victim in a parking lot).

While there is no rigid rule for determining when conduct is sufficiently similar, the determination of similarity depends on whether that conduct has some relevance to prove an issue in dispute. We reiterate that in this case the only issue before the jury was whether N.B. consented. We do not find that the indecent exposure incident, followed by an apology from Keys and the fact that he left P.B. alone, is similar or relevant to determining what occurred between N.B. and Keys. The two incidents are so completely different in surrounding circumstances, acts committed, and victims, that we cannot reasonably conclude that one is probative of the other.

In *Crist*, we held that evidence of the defendant showing a young girl pornographic magazines and attempting to get her to dress in a nightgown were not sufficiently similar to a charge of sexual abuse. We concluded:

> These acts are, however, evidence of character. These innuendos would tend to distract the trier of fact from the main question of what actually happened on the occasions charged.

*Crist*, 833 P.2d at 1055.

In this case, we also find that the innuendos that could be drawn from this evidence would tend to go to Keys' character and his propensity to act in a certain way and could, therefore, distract the trier of fact from the issue in question. We do not find enough similarity between the acts to conclude that the indecent exposure episode is probative of the issue of N.B.'s consent.

The State next contends that the evidence was offered to prove Keys' motive and intent which are both permissible purposes under our holding in *Matt* and Rule 404(b), M.R.Evid., for prior acts evidence. But merely reciting an allowable purpose is not sufficient if the evidence does not further that purpose or that purpose is not an issue in dispute. In this case, the State ultimately argues that the indecent exposure incident is probative of determining whether Keys was concerned with the consent of victims of his sexually aggressive behavior. However, this is in essence an argument that Keys committed the crime for which he was being tried because he is a person of poor character. This is precisely what prior acts evidence may not be used for.

> [T]he prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is introduced for some purpose other than to suggest that because the defendant is a person of criminal character, it is more probable that he committed the crime for which he is on trial.

John W. Strong, McCormick on Evidence 798 (4th ed. 1992).

Furthermore, it is not Keys' intent or motive which is the determinative factor in this case. Rather, it is the victim's intent, and whether she consented to the act of intercourse, which is dispositive of whether a crime was committed. Keys clearly intended to have sexual intercourse with N.B., and even if he intended to do this forcibly and without her consent, this criminal intent would be irrelevant if N.B. consented.

We conclude that the purposes for which the State contends the evidence is being presented are not relevant to the question being tried in this case. The only relevant purpose for the evidence goes to Keys' character, and this use of prior acts evidence is explicitly prohibited by Rule 404(b), M.R.Evid.

Because the evidence is inadmissible under the first and third criteria, it is not necessary to discuss the remaining requirement under the modified *Just* rule. For the reasons stated, we hold that the District Court abused its discretion when it allowed P.B. to testify about the incident with Keys and remand this case for a new trial.

Inasmuch as we are reversing on the first issue and not allowing the admission of the prior acts evidence, the question of whether Keys' was deprived of a fair and impartial trial because the evidence could not be discussed during opening statements need not be discussed.

Keys contends that judgment should be entered in his favor because the State's evidence is insufficient to convict him. He maintains that the evidence presented by the State during the trial

11

is so inherently incredible that it is unworthy of belief. We disagree.

Keys' argument is premised on his assertion that, given the size of the two parties involved and the size of the car, consensual intercourse was possible, but N.B. could not have been forced to do anything she was unwilling to do. Keys also points to a number of instances during the trial where N.B. gave nondefinitive statements or could not recall certain details.

The State's evidence consisted of N.B.'s testimony, supported by physical evidence and the testimony of other witnesses who were with her shortly after the alleged rape, which corroborated her testimony. The jury heard and weighed N.B.'s testimony that the sexual intercourse occurred without her consent, and then heard and weighed Keys' conflicting testimony that it occurred willingly. It is well settled in Montana that uncorroborated testimony of the victim, standing alone, is sufficient for conviction of sexual intercourse without consent. *State v. Whitcher* (1991), 248 Mont. 183, 810 P.2d 751; *State v. French* (1988), 233 Mont. 364, 760 P.2d 86.

The jury was also aware that Keys had lied to police officers at various stages of the investigation because he feared a rape accusation, and it was noted that one of these lies occurred before there was any mention that the police were, in fact, investigating a possible rape.

If there is conflicting evidence, it is within the province of the trier of fact to decide who to believe. *State v. Medina* (1990),

12

245 Mont. 25, 34, 798 P.2d 1032, 1038 (quoting *State v. Brown* (1989), 239 Mont. 453, 781 P.2d 281). In this instance, after considering not only the testimony of N.B. and Keys, but also the testimony of other witnesses and physical evidence, the jury, by its verdict, resolved the conflict in favor of the State.

The applicable standard of review for determining the sufficiency of the evidence is

> [W]hether, after reviewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Emphasis added.]

*Medina*, 798 P.2d at 1037. Although Keys tries to isolate and emphasize some of the particulars that N.B. could not clearly remember, the jury had before it ample evidence to justify resolution of the credibility issue in favor of N.B. and to find that there was lack of consent. We cannot conclude that Keys' arguments about the size of the car or N.B.'s testimony meet the burden of showing that no rational trier of fact could have reached this decision. Nor do we find the evidence so inherently incredible that it is unworthy of belief.

However, based upon our conclusion that the District Court improperly admitted the evidence of Keys' prior, uncharged incident of sexual misconduct, the judgment of the District Court is vacated and this case is remanded for a new trial.

_____
Justice

13

We concur:

_____
            Chief Justice


_____

*William E. Hunt Sr.*

*R.C. McDonough*

*Karla M. Gray*
_____
            Justices

Justice Fred J. Weber dissents as follows:

The majority opinion sets forth limited information regarding the claimed sexual intercourse without consent. I believe additional facts should be considered in evaluating the evidence.

The testimony of the eighteen year old victim, N.B., established that she, her female roommate, and her roommate's male companion had attended the fair at the Great Falls fairgrounds. The three of them went to TJ's Bar at approximately 12:30 a.m. At the bar the defendant introduced himself to N.B. N.B.'s roommate and boyfriend inadvertently stranded N.B. at the bar assuming she had a ride. While N.B. unsuccessfully attempted to obtain a ride home from other friends, the defendant interrupted and indicated he would give her a ride home. In the car defendant asked N.B. if she would go on a date with him and when she refused, N.B. thought he was offended by her rejection. Defendant stopped the car and commenced kissing her and she reacted by pushing him away and asked him to take her home. He then made various sexual advances, including stating, "I know we are going to make love tonight" to which N.B. responded, "No, we are not." Without detailing the extensive testimony, N.B. testified to the very forcible act of sexual intercourse by defendant. At the trial photographic exhibits were introduced showing the bruises on the inside of N.B.'s knees which had been caused during the act. After the act, N.B. ran from the car to a nearby home of a friend who happened to be working in an open garage on his car. That friend testified that N.B. appeared holding a sock in her hand, terrified, crying

15

and frantically hysterical. She immediately complained of the rape. The testimony as to her hysterical condition was confirmed by the police officers and others, including the emergency room medical doctor. In addition, after the incident, N.B. moved out of her apartment and back in with her parents because she testified she was scared to death to live alone.

The majority concludes that the District Court abused its discretion when it admitted evidence of the prior incident with P.B. In considering such evidence, it is important to consider the entire Modified Just Rule:

> We therefore now adopt the following as the Modified _Just_ Rule which sets forth the basis for the admission of evidence of other crimes, wrongs or acts as referred to and described in Rules 404(b) and 403, M.R.Evid.:
> (1) The other crimes, wrongs or acts must be similar.
> (2) The other crimes, wrongs or acts must not be remote in time.
> (3) The evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character; but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
> (4) Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

State v. Matt (1991), 249 Mont. 136, 142, 814 P.2d 52, 56. The Modified Just Rule contains the essential elements of Rule 404(b), which is separately cited in the majority opinion. In addition, as pointed out in State v. Sadowski (1991), 247 Mont. 63, 805 P.2d

16

537, the Modified Just Rule must be classed as an inclusory rather than exclusory rule. The Sadowski Court stated:

> As with its federal counterpart, the Montana rule adopts an inclusionary rather than exclusionary approach, that is, use of the word "may" indicates that the second sentence actually lists theories of relevant examples rather than exceptions . . .

Sadowski, 247 Mont. at 70, 805 P.2d at 541.

The majority opinion concludes that the only element of the Modified Just Rule which has been satisfied is paragraph (2), which requires that the other acts must not be remote in time. Here the prior incident with P.B. occurred only a month prior to the crime. I do agree with that conclusion but not with the remaining evaluation of the Modified Just Rule.

The Modified Just Rule requires that the other crime, wrong or act must be "similar." The majority notes a number of cases in which this Court has concluded that the Rule allows the admission of evidence where acts are quite dissimilar. In addition to the cases cited by the majority, State v. Tecca (1986), 220 Mont. 168, 714 P.2d 136, allowed the admission of evidence on a charge of felony sexual assault. The claimed sexual assault included the defendant's touching the eleven year old complaining witness and inserting his finger in her vagina. This Court concluded that the other acts were admissible in evidence though not identical and stated as follows:

> While the prior acts were not identical to the offense committed in this case, there is sufficient similarity to sustain admission. Each of the incidents involved young girls and occurred in the Tecca home. . . . Both R.T. and L.C. testified that they had been awakened in the middle of the night to find defendant

**17**

next to the bed dressed only in his underwear. These
incidents bear sufficient similarity to the charged
offense to uphold their admission.

Tecca, 220 Mont. at 172, 714 P.2d at 138. Note that there was no

offense at all in the conduct which consisted of an older man

sitting on the bed of two young girls dressed only in his

underwear. Yet this Court concluded there was sufficient

similarity to uphold admission. Clearly Tecca is authority for the

conclusion that paragraph (1) of the Modified Just Rule had been

satisfied.

In analyzing this issue, the majority stated as follows:

We reiterate that in this case the only issue before
the jury was whether N.B. consented.

I believe this is a misstatement of the issue. The issue before

the court was whether or not the defendant knowingly or purposely

committed the offense of sexual intercourse without consent. As

set forth in the Modified Just Rule, evidence may be admissible to

prove motive or intent.

We will now consider whether the acts were sufficiently

similar to meet paragraph (1) of the Modified Just Rule. Both

incidents took place after the defendant met the parties at a bar

in the early morning hours and after they left the bar with him.

I emphasize that the defendant admitted that his conduct took place

as P.B. testified in the present case. The act with P.B. indicated

the clear desire, and possible intent, on the part of the defendant

to have sexual intercourse with P.B. The conduct is clearly

similar to that with which he is charged in the principal case,

that being sexual intercourse without consent. There was no

18

consent on the part of P.B. to the sexual exposure and statements made. Such evidence could be construed as an intention on the part of the defendant to have sexual intercourse without consent if necessary. I conclude that the surrounding circumstances, and the acts committed, and the victims themselves, all suggest sufficient similarity to meet the requirements of paragraph (1) of the Modified Just Rule. I would further point out that a failure of the offered evidence to meet any one of the factors does not preclude admissibility. See State v. Randall (1989), 237 Mont. 271, 772 P.2d 868, and other cases therein cited.

We agree with the majority that paragraph (2) of the Modified Just Rule has been met.

Paragraph (3) of the Modified Just Rule states that the evidence may be admissible for other purposes such as proof of motive or intent. Defendant's conduct with P.B. clearly was not consented to by her. It clearly could be considered by a finder of fact to be evidence of a motive or intent to have sexual intercourse, without consent if necessary. I conclude that the evidence meets the test of paragraph (3) of the Modified Just Rule.

Paragraph (4) of the Modified Just Rule provides that the evidence may be excluded if substantial prejudice outweighs the danger of unfair prejudice or confusion of issues, or is misleading. I conclude that while the evidence certainly may have had some influence upon the jury, there is nothing in the nature of unfair prejudice, confusion of issues or misleading of the jury.

**19**

I conclude that the evidence meets the test of paragraph (4) of the Modified Just Rule.

In its concluding analysis, the majority opinion again emphasizes that it is not the defendant's intent or motive which is the determinative factor in this case. It concludes that it is the victim's intent. I disagree with that analysis. The requirement on the part of the trier of fact was to determine whether or not the defendant knowingly or purposely committed sexual intercourse without consent. I disagree with the majority's conclusion that evidence of the prior act in this case is not relevant to the question being tried.

I would affirm the conviction of the defendant.

_____
Justice

Chief Justice J. A. Turnage and Justice John C. Harrison concur in the foregoing dissent.

_____
Chief Justice

_____
Justice