JUSTICE McKINNON,
dissenting.
¶43 In my opinion, Crider presents credible arguments that the evidence of his prior domestic abuse should not have been admitted under theories of “motive” or “absence of mistake or accident” to substantively prove his guilt of the charged offenses. Moreover, it is my view that, had the District Court been presented with the analysis which Crider now presents on appeal, the District Court’s ruling on the uncharged misconduct evidence likely would have been different. However, the first time that any court has been asked to consider Crider’s arguments as to why the particular Rule 404(b) theories do not apply is in the present appeal, long after Crider’s trial ended.
¶44 While our decision in State v. Eighteenth Judicial District Court, 2010 MT 263, 358 Mont. 325, 246 P.3d 415, significantly altered the procedural requirements for objecting to other-acts evidence from what had previously been established under State v. Just, 184 Mont. 262, 602 P.2d 957 (1979), and State v. Matt, 249 Mont. 136, 814 P.2d 52 (1991), it did not alter our well-established precedent requiring the defense to state with specificity the bases for its objections to such evidence. In fact, the procedures we established in Eighteenth Judicial District Court reaffirmed that the defense must specify its objections to the evidence of other crimes, wrongs, or acts — and the particular reasoning for those objections — in the district court. The Court’s approach in today’s decision undermines this requirement and our longstanding precedent which states that we will not consider arguments raised for the first time on appeal. State v. Homer, 2014 MT 57, ¶ 12, 374 Mont. 157, 321 P.3d 77; State v. Lotter, 2013 MT 336, ¶ 31, 372 Mont. 445, 313 P.3d 148; State v. Stops, 2013 MT 131, ¶ 33, 370 Mont. 226, 301 P.3d 811; State v. Kelm, 2013 MT 115, ¶ 35, 370 Mont. 61, 300 P.3d 687; State v. Lewis, 2012 MT 157, ¶ 22, 365 Mont. 431, 282 P.3d 679. I accordingly dissent.
Whether the Issue was Preserved for Review
¶45 Prior to Eighteenth Judicial District Court, a prosecutor was required to sort through the State’s evidence, ascertain whether any of *202 it might be objectionable tmder Rule 404(b), and give the defendant notice of that evidence before the omnibus hearing.[1] Eighteenth Jud. Dist. Ct., ¶¶ 40-41 (discussing the notice rules under Just, 184 Mont. at 274, 602 P.2d at 963-64, and Matt, 249 Mont. at 142-43, 814 P.2d at 56); see also § 46-13-109, MCA (2009), repealed, Laws of Montana, 2011, ch. 130, § 2. The prosecutor had to identify the potentially objectionable evidence, specify the purposes for which it was being offered, and apprise the defendant why the evidence was admissible under the purposes stated. The defendant then would respond to the prosecutor’s notice, arguing that the notice was deficient, that the evidence was not admissible under the prosecutor’s theories, or both.
¶46 We determined in Eighteenth Judicial District Court that this procedure was problematic for various reasons. “For one thing, it put[ ] the prosecutor in the position of having to justify the admission of evidence in the absence of any objections by the defendant” Eighteenth Jud. Dist. Ct., ¶ 44. It forced the prosecutor to “identify any prosecutorial evidence” to which the defense might object and to “anticipate what the defense objections might be.” Eighteenth Jud. Dist. Ct., ¶ 45. “It also relieve[d] defense counsel of her duty to diligently prepare a defense for her client, to seek discovery of the State’s case, to determine which of the State’s evidence may be inadmissible, and then to raise any viable evidentiary issues before triad.” Eighteenth Jud. Dist. Ct., ¶ 46.
¶47 We concluded that the better approach would be for these evidentiary issues to be raised initially by the defense. Eighteenth Jud. Dist. Ct., ¶ 49. We therefore overruled Just and Matt and adopted the following procedures. The State first must disclose to the defendant the witnesses and evidence it may introduce at trial. The defendant then must identify any of the State’s evidence that he believes should be excluded as irrelevant (Rule 402), unfairly prejudicial (Rule 403), relevant only for an improper propensity inference (Rule 404), or inadmissible under some other rule, and “explain with argument and authority why the evidence should be excluded.” Eighteenth Jud. Dist. Ct., ¶ 49. We noted that this may be accomplished through a motion in limine. Eighteenth Jud. Dist. Ct., ¶ 49. The prosecutor next must *203 respond to the defendant’s objections and identify a valid, nonpropensity purpose for which the evidence may be admitted. Eighteenth Jud. Dist. Ct., ¶ 49. Lastly, implicit in this framework and consistent with our precedent generally requiring specificity in order to preserve error, if the defendant believes that the particular Rule 404(b) theory or nonpropensity purpose identified by the prosecutor is invalid, then the defendant must advance his theory of inadmissibility, beyond a mere generalized Rule 404(b) objection, in order to preserve the issue for review. Indeed, without a response from the defendant, the district court is left with an uncontested argument by the State for admitting the evidence under a given nonpropensity theory.
¶48 Unfortunately, this procedure was not fully complied with in the present case. Through the normal course of discovery, Crider was given notice of the State’s evidence, which included over 50 police reports dating back to 2004. Additionally, in the Omnibus Hearing Memorandum (filed December 20, 2011), the prosecutor expressly stated that she intended to introduce evidence of other crimes, wrongs, or acts. The Omnibus Hearing Memorandum set forth a timeline for the parties’ briefing on this issue: Crider’s initial brief was due on January 6, 2012; the State’s response brief was due ten days after Crider’s brief was served; and Crider’s reply brief was due five days after the State’s brief was served. The District Court specifically contemplated a reply brief from Crider addressing the nonpropensity theories proposed by the State.
¶49 Crider filed his initial brief on January 6,2012. However, he did not identify with specificity what evidence he was objecting to. Instead, observing that “[ajpparently, the State will attempt, at trial, to bring into evidence prior criminal or wrongful conduct of the Defendant,” Crider presented a generalized argument that any such evidence cannot be used “to establish the Defendant’s character and conduct in the instant case conforms to his character and conduct in prior incidents of bad acts.” Of course, this assertion just restates what Rule 404(b) already says: “Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.” The Court contends that Crider’s brief referenced the reports dating back to 2004. Opinion, ¶ 22. This reference, however, appeared in the second-to-last paragraph of the briefs Discussion section, where Crider opined that “[c]ertain of the conduct which we believe the State will no doubt attempt [to] bring forth dates back to 2004. Most of it occurred circa 2004 to 2007.” Concerning this evidence, Crider merely asserted: “Quite simply, the *204 information is stale” and “creates the real risk of swaying the jury into penalizing the Defendant for his past bad character.”
¶50 In my view, this brief is inadequate under Eighteenth Judicial District Court. It is not the prosecution’s responsibility to identify which of the State’s evidence the defense might find objectionable under Rule 404(b). Indeed, identifying whether a particular piece of evidence even constitutes “[ejvidence of other crimes, wrongs, or acts” is “a task which our cases show is not always straightforward.” Eighteenth Jud. Dist. Ct., ¶ 45. Largely for this reason, we put the onus on the defendant to identify specifically which evidence he finds objectionable and to make “specific, legally supported objections” explaining why that evidence should be excbidedSighteenth Jud. Dist. Ct., ¶¶ 49, 72. The system does not function properly when the defendant’s briefimotion provides only vague references to the State’s evidence and asserts generalized objections that other-acts evidence cannot be used to show action in conformity with character. Merely reciting the dangers of other-acts evidence proves nothing. We clearly contemplated in Eighteenth Judicial District Court something more than the sort of generalized arguments Crider provided in this case.
¶51 But even assuming, for the sake of discussion, that Crider’s brief was sufficient in identifying the police reports, I still do not agree with the Court that he preserved his present arguments for our review. The State filed its response brief on January 17,2012. In it, the prosecutor referred to domestic disturbance calls to law enforcement from 2004 through 2007 involving Crider’s former girlfriend. The prosecutor also detailed calls to law enforcement involving M.W. beginning in July 2010 and continuing into 2011. The prosecutor listed several theoretical purposes for introducing this evidence: “to show that Crider had a motive, intent, and plan to harm, control, and harass the victim, M.W., and that her injuries were not a result of any accident or mistake that occurred on the date of the offense.” The prosecutor, focusing primarily on the motive and plan theories, argued that Crider had “a motive to harass and intimidate” M.W. in order to control her and that his abuse of M.W. was “part of Crider’s common scheme, plan, and intent to control the women in his life.”
¶52 Despite the briefing schedule set forth in the Omnibus Hearing Memorandum, Crider did not file a reply brief. Since neither party had requested a hearing, the District Court proceeded to issue its decision on February 1, 2012. The court excluded any police reports involving other women, reasoning that such evidence “is more in the nature of demonstrating a trait of bad character.” The court ruled, however, that *205 the police reports involving M. W. were probative of motive and absence of mistake or accident.
¶53 Due to his failure to file a reply brief in the District Court, the first time Crider presented an argument challenging the prosecutor’s theories for admitting the evidence of his prior domestic abuse is in his opening brief on appeal. I disagree with the Court’s decision to sanction this approach. Once the prosecutor has articulated a nonpropensity theory for admitting the evidence, the defendant’s failure to present any counterargument forfeits a claim of error (regardingthat evidence) on appeal. Homer, ¶ 12; Loiter, ¶ 31; Stops, ¶ 33; Kelm, ¶ 35; Lewis, ¶ 22. If, as the Court tacitly holds, the defendant need not respond to the prosecutor’s brief with an analysis opposing the prosecutor’s proposed theory, then the trial court will be left with a one-sided argument from the State, and the defendant will be able to challenge the trial court’s decision with arguments presented for the first time on appeal. As we have explained, it is fundamentally unfair to fault the trial court for failing to rule on an argument it was never given the opportunity to consider. City of Missoula v. Moore, 2011 MT 61, ¶ 13, 360 Mont. 22, 251 P.3d 679. Had the District Court been presented with the detailed arguments that Crider is now making, the court very well might have decided to exclude the evidence, thereby eliminating any need for Crider to assert this on appeal as an alleged error in his trial. Crider should not be permitted to fault the District Court for failing to rule in his favor on arguments he never presented to that court.
¶54 In State v. Vukasin, 2003 MT 230, 317 Mont. 204, 75 P.3d 1284, we held that generalized motions in hmine which broadly object to any “reference, comment, allusion or statement made to any crime, wrong or act pursuant to M.R.Evid. Rule 404(b)” are insufficient to preserve a Rule 404(b) issue for appellate review. Vukasin, ¶¶ 35-38. The trial court must be “alerted” to the specific testimony or evidence that the defendant finds objectionable and apprised of the defendant’s specific theory for excluding that testimony or evidence. Vukasin, ¶¶ 35, 37. Our decision today undermines these requirements. The Court effectively approves the use of standardized motions in hmine which object in general terms to the introduction of other-acts evidence. Conceivably, we have retreated from the procedural advancements of Eighteenth Judicial District Court by once again requiring prosecutors to divine which evidence the defendant finds objectionable under Rule 404(b) and to specify a basis for admissibility. Furthermore, we have chosen to review a district court’s evidentiary ruling based on *206 arguments that were not presented to the district court in the first instance. I agree with the State’s contentions in its appellate brief that Crider’s Rule 404(b) claim is not properly before us. I dissent from the Court’s procedural ruling allowing Crider to pursue that claim on appeal. Opinion, ¶¶ 22-23.
Whether the State’s Nonpropensity Theories are Valid
¶55 Given that the Court has addressed the merits of Crider’s claim, I believe the Court misuses theories of “motive” and “absence of mistake or accident” to hold that Crider’s uncharged misconduct was admissible to prove the charged misconduct.
¶56 The State charged Crider with four offenses: sexual intercourse without consent, partner or family member assault, criminal mischief (of which he was acquitted), and tampering with witnesses and informants. In arguing that the evidence of Crider’s past domestic abuse should be admitted, however, the State was unclear about which elements of which offenses this evidence was offered to prove. Moreover, while the State argued that the evidence would show motive and absence of mistake or accident, the State failed to explain precisely how these purposes were probative of a fact in dispute. See State v. Ayers, 2003 MT 114, ¶ 87, 315 Mont. 395, 68 P.3d 768. On appeal, the State posits that the evidence was admissible to show that Crider intended to commit “injurious sex acts” and that M.W. did not consent to those acts. The Court similarly focuses on “the sexual acts” and whether they were consensual. Opinion, ¶¶ 26-27. Accordingly, I likewise address whether Crider’s uncharged misconduct was relevant, under theories of motive and absence of mistake or accident, in proving the sexual acts and whether M.W. consented to them.
¶57 Motive is rarely an element of a crime. It is, however, an intermediate, evidentiary fact that can be used to establish an ultimate fact in the case. David P. Leonard, The New Wigmore: Evidence of Other Misconduct and Similar Events § 8.1,488 (Aspen 2009); Edward J. Imwinkelried, Uncharged Misconduct Evidence vol. 1, § 3:15, 3-95 (rev. ed., Thomson Reuters/West 2009). There are two ways in which uncharged misconduct can be used under a motive theory. In the first, the uncharged act supplies the motive for the charged act. In a homicide prosecution, for example, evidence that the defendant was involved in a prior theft may be relevant under a motive theory where, prior to her death, the homicide victim learned of the defendant’s involvement in the theft and threatened to report it to authorities. The theft and the victim’s knowledge of it furnish a motive for the defendant to prevent the victim from revealing the theft, which *207 supports the inference that the person responsible for the victim’s death is the defendant. Leonard, Evidence of Other Misconduct and Similar Events § 8.2,491-92. Many other persons presumably had no motive to murder the victim; thus, the fact that the defendant did have a motive for killing the victim raises the probability that the defendant is the one who did so. Imwinkelried, Uncharged Misconduct Evidence § 3:15,3-97.
¶58 Under the second method, the uncharged act does not provide the motive for the charged act, but instead evidences the existence of a motive, such as a desire for revenge, which explains both the uncharged act and the charged act; in other words, “the charged crime can be understood as another expression of the feelings revealed in the [uncharged] acts.” Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence vol. 1, § 4:32, 802 (3d ed., Thomson/West 2007); Imwinkelried, Uncharged Misconduct Evidence § 3:15, 3-98 to 3-99. We applied this theory in Eighteenth Judicial District Court, where the defendant was charged with causing the death of her infant daughter. We held that evidence of the defendant’s past hostility toward and abusive treatment of the infant was admissible to show that the defendant was frustrated and angry and did not want her daughter and, therefore, that the defendant had a motive to cause the infant’s death. Eighteenth Jud. Dist. Ct., ¶¶ 58-59.
¶59 The Court and the State purport to rely on this latter approach. The prosecutor’s brief in the District Court explains that the State sought to introduce evidence of Crider’s prior misconduct to show “that Crider made a habit of abusing, harassing, and stalking his partner” in order “to get whatever he wants or to punish his partner for perceived infidelities.” The State further explains in its brief on appeal that all of Crider’s abusive acts toward M. W. — the prior uncharged acts and the presently charged acts — were the product of a single motive: “to control M.W. by force when he was unhappy with her or wanted something from her.” The State reasons that the prior acts are proof of this motive, from which the jury could infer that Crider raped and assaulted M.W. on the night in question. The Court adopts this theory, reasoning that Crider’s prior acts of violence and harassment establish a “motive of exerting power and control” over M. W. through the use of force and intimidation, and that this motive inspired Crider to commit both the prior uncharged acts and the presently charged acts. Opinion, ¶¶ 25-26.
¶60 In my view, the Court has erred for two reasons. First, “merely reciting an allowable purpose is not sufficient if... that purpose is not *208 an issue in dispute.” State v. Keys, 258 Mont. 311, 317, 852 P.2d 621, 625 (1993). In Keys, the defendant (Keys) was charged with the offense of sexual intercourse without consent. There was no dispute that Keys had knowingly engaged in sexual intercourse with the victim, N.B. The issue was whether N.B. had consented. Keys, 258 Mont. at 314, 852 P.2d at 623. The State introduced evidence of prior sexual misconduct by Keys to show that his sexual intercourse with N.B. had been without her consent. Keys, 258 Mont. at 315-16, 852 P.2d at 624. The State relied on theories of “motive and intent,” arguing that the prior misconduct was “probative of determining whether Keys was concerned with the consent of victims of his sexually aggressive behavior.” Keys, 258 Mont. at 316, 317, 852 P.2d at 624, 625. We explained, however, that
it is not Keys’ intent or motive which is the determinative factor in this case. Rather, it is the victim’s intent, and whether she consented to the act of intercourse, which is dispositive of whether a crime was committed. Keys clearly intended to have sexual intercourse with N.B., and even if he intended to do this forcibly and without her consent, this criminal intent would be irrelevant if N.B. consented.
Keys, 258 Mont. at 317, 852 P.2d at 625 (emphasis in original). We thus held that the defendant’s motive or intent is not relevant where the only issue is whether the victim consented to the sexual intercourse. Keys, 258 Mont. at 317-18, 852 P.2d at 625.
¶61 That is the situation here. There was no dispute that Crider and M.W. had sexual intercourse and that the sex was “rough.” M.W. admitted that she and Crider had engaged in consensual rough sex on prior occasions. M.W. also stated that, on the night in question, she told Crider “he could do whatever he wanted” to her. M.W. indicated, however, that their sex that night was more violent than in the past and that she told Crider to stop, but he refused to do so. Crider, on the other hand, maintained that M.W. consented to the sex. The disputed issue, therefore, was M. W.’s consent, not Crider’s intent. Even if Crider had a motive to punish or exert control over M.W. by having sex with her “forcibly and without her consent, this criminal intent would be irrelevant if [M.W.] consented.” Keys, 258 Mont. at 317, 852 P.2d at 625. Thus, Crider’s motive was irrelevant and the Court errs in *209 affirming the admission of the disputed evidence under that purpose.[2]
¶62 Second, aside from the evidence’s lack of relevance, the “motive” theory the Court approves here is, in truth, a forbidden character-based propensity theory. “When prior bad act evidence is offered to prove a motive for the crime, ‘courts must be on guard to prevent the motive label from being used to smuggle forbidden evidence of propensity to the jury.’ ” U.S. v. Varoudakis, 233 F.3d 113, 120 (1st Cir. 2000) (citing Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure vol. 22, § 5240 (1978)). Indeed, “[i]t can be easy to confuse evidence of propensity with evidence of motive,” Harrison v. U.S., 30 A.3d 169, 178 (D.C. 2011), and “[t]he more difficult it is to distinguish motive and character, the greater the danger of jury misuse,” Leonard, Evidence of Other Misconduct and Similar Events § 8.3,504. Motive is a situationally specific emotion, whereas character connotes an enduring general propensity. Imwinkelried, Uncharged Misconduct Evidence § 3:15, 3-96. “Character is thought to be a generalized tendency to act in a particular way, caused by something internal to the actor that arises from that person’s moral being.” Leonard, Evidence of Other Misconduct and Similar Events § 8.3, 493-94. In contrast, “motive is more specific than character, and its existence in a given situation does not depend on the person’s morality-” Leonard, Evidence of Other Misconduct and Similar Events § 8.3,496. Under the right circumstances, even nonviolent people can have a motive to act violently, and honest people can have a motive to *210 lie. “We assume that a motive might exist because any person might possess one under those specific circumstances. The tendency to have such a motive is simply human; it does not derive from a trait of character specific to the person involved in the trial.” Leonard, Evidence of Other Misconduct and Similar Events § 8.3,496 (emphases in original).
¶63 The Court and the State have lost sight of this distinction. Saying that Crider has a “habit of abusing, harassing, and stalking” the women in his life, or that he has a “motive of exerting power and control” over M.W. through force, is just another way of saying that Crider has a “generalized tendency” or “enduring general propensity” to behave abusively toward women, and that he acts in conformity with this disposition. Having a “motive” to exert power and control through violence is indistinguishable from having a violent and controlling character. Neither the Court nor the State identifies a situationally specific basis for Crider’s “motive”; rather, the Court and the State simply view Crider as someone who has a propensity — which the Court and the State re-label as “motive” — to act abusively toward his partner as a means of controlling her, as evidenced by his past conduct. Applying the Court’s analysis to other contexts, a defendant’s prior drug sales could be introduced to establish a “motive” to earn money by selling drugs; a defendant’s prior break-ins could be introduced to establish a “motive” to acquire jewelry by burglarizing houses; and a defendant’s prior arsons could be introduced to establish a “motive” to ease financial burdens by burning property and collecting the insurance proceeds. Realistically, what such evidence actually shows is that the defendant is a drug dealer, a burglar, or an arsonist, respectively. The history of prior misconduct establishes that each of these defendants has a predisposition, or is the type of person, to employ wrongful or criminal acts to achieve his sums. Permitting “motive” to be used in this way undermines Rule 404(b)’s prohibition on showing that a person acted in conformity with his character.[3]
*211 ¶64 Indeed, the defendant in Varoudakis was charged with arson of his restaurant, and the prosecution introduced evidence that the defendant had also committed arson of his car. The theory was that the defendant had a “motive” to commit arsons in order to alleviate financial burdens by collecting insurance proceeds, and thus “[his] commission of the car fire arson in response to financial stress makes it more likely that he committed the restaurant arson in response to financial stress.” Varoudakis, 233 F.3d at 120. The court rejected this as an improper propensity inference. Varoudakis, 233 F.3d at 120.
¶65 Likewise, in State v. Brown, 242 Mont. 506, 791 P.2d 1384 (1990), the defendant was charged with felony assault after striking and attempting to choke an officer who was in the process of placing the defendant under arrest. The State introduced evidence of prior instances in which the defendant had been verbally and physically abusive when police officers attempted to restrain or arrest him. The State claimed this evidence was admissible “for the purpose of proving defendant’s motive and intent with respect to his conduct at issue in the proceedings.” Brown, 242 Mont. at 509, 791 P.2d at 1386. Evidently, the State’s theory was that the defendant had a “motive and intent” to resist any attempts to restrain him by behaving abusively toward the officer — the mirror image of Crider’s so-called “motive” to exert power and control over M.W. by abusing and harassing her. We held that admitting the evidence under this theory was error because the defendant’s acts in the charged and uncharged instances were “spontaneous acts dictated by his character and the situation at hand.” Brown, 242 Mont. at 510, 791 P.2d at 1386.
¶66 In the present case, the testimony about Crider’s prior misconduct does not establish that he had a motive to have nonconsensual sexual intercourse with M.W. It does establish, however, that Crider had a propensity to behave in a physically violent manner when he and M. W. had disputes regarding their relationship. It is improper propensity reasoning to say that Crider’s acts were the result of a “motive” to control M. W. through violence. I thus conclude that the “motive” theory argued by the State and adopted by the Court is not only irrelevant under Keys, 258 Mont. at 317-18, 852 P.2d at 625, but also violative of Rule 404(b)’s bar on character-based propensity inferences.
¶67 I also disagree with the Court’s reliance on an absence of mistake or accident theory. Opinion, ¶ 27. “ ‘Absence of mistake or accident’ is generally synonymous with intent. Courts tend to use the phrase ‘absence of mistake or accident’ in cases in which the party charged with wrongdoing asserts that the harm was caused *212 inadvertently — without the requisite intent.” Leonard, Evidence of Other Misconduct and Similar Events § 7.2.2,429. In other words, the defendant concedes that the charged act occurred but denies a criminal intent by claiming innocent mistake. Uncharged misconduct may be admissible in this situation to negate mistake. U.S. v. Kuipers, 49 F.3d 1254, 1258 (7th Cir. 1995). For example, if the defendant admits that the bookkeeping entry in question is erroneous but testifies that the entry was an unknowing mistake, proof of other incorrect entries in the same set of books would be logically relevant to rebut the claim of mistake. Imwinkelried, Uncharged Misconduct Evidence § 5:33, 99. This theory avoids the forbidden propensity inference by focusing on the probability of events, not the tendency to act in accord with a disposition. Mueller & Kirkpatrick, Federal Evidence § 4:34, 829-30; Kenneth S. Broun, McCormick on Evidence vol. 1, § 190,1039-40 (7th ed., Thomson Reuters 2013).
¶68 Again, “merely reciting an allowable purpose [under Rule 404(b)] is not sufficient if the evidence does not further that purpose or that purpose is not an issue in dispute.” Keys, 258 Mont. at 317, 852 P.2d at 625; accord State v. Ayers, 2003 MT 114, ¶ 87, 315 Mont. 395, 68 P.3d 768; see also State v. Sweeney, 2000 MT 74, ¶ 24, 299 Mont. 111, 999 P.2d 296 (evidence of other crimes is admissible to prove intent only if intent is “a material issue”). Hence, whether an absence of mistake or accident theory is valid depends on the specific facts of the case — particularly, whether the defendant has asserted or implied that the wrongful act was the product of a mistake or accident. For instance, we approved the theory’s use in Eighteenth Judicial District Court, where the defendant had suggested to authorities that her infant daughter’s death was accidental. We held that the State could introduce evidence of the defendant’s prior mistreatment of the infant to rebut her claim of accident. Eighteenth Jud. Dist. Ct., ¶¶ 58,61,64, 65.
¶69 In the present case, Crider never claimed that he accidentally raped and assaulted M.W. He instead claimed that their sexual encounter, although violent, was consensual. The Court’s theory that Crider’s behavior on other occasions was necessary to disprove that he accidentally exceeded M. W.’s consent on the charged occasion, Opinion, ¶ 27, is logically flawed. First, to commit the offense of sexual intercourse without consent, the person must “knowingly ha[ve] sexual intercourse without consent with another person.” Section45-5-503(1), MCA. If Crider knew that M. W. had withdrawn her consent to the sex, then he could not claim that he “accidentally” raped her. Conversely, *213 if Crider did not know that M. W. had withdrawn her consent, then he did not “knowingly ha[ve] sexual intercourse without consent.” Second, the prior instances of misconduct cited by the Court — making constant phone calls to M.W., lurking outside her place of residence, breaking down her door, and preventing her from calling the police, Opinion, ¶ 26 — are not probative of the issues in dispute, namely, (1) whether M.W. withdrew her consent to the sex on the evening of July 8,2011, and (2) whether Crider knew that M. W. had withdrawn her consent to the sex that evening. None of the prior instances of misconduct involved sexual relations between Crider and M.W., and the evidence sheds no light on what M.W. intended, and what Crider knew, on the night in question. The evidence was simply not relevant to the issues at trial.
¶70 On the other hand, the evidence was highly prejudicial. We have recognized the dangers of uncharged misconduct evidence in numerous cases. State v. Derbyshire, 2009 MT 27, ¶¶ 21-22, 51, 349 Mont. 114, 201 P.3d 811; State v. Sage, 2010 MT 156, ¶¶ 36-37, 357 Mont. 99, 235 P.3d 1284; State v. Rogers, 2013 MT 221, ¶¶ 31-32, 371 Mont. 239, 306 P.3d 348. Generally, such evidence must be excluded because “prior acts or crimes are highly prejudicial to the defendant, and usually irrelevant for purposes of the charged crime.” State v. Croteau, 248 Mont. 403, 407, 812 P.2d 1251, 1253 (1991);accord State v. Ray, 267 Mont. 128, 133-34, 882 P.2d 1013, 1016 (1994). Evidence of a defendant’s prior acts or uncharged misconduct creates the risk that the jury will penalize the defendant simply for his past bad character, Croteau, 248 Mont. at 407-08, 812 P.2d at 1253; Ray, 267 Mont. at 134, 882 P.2d at 1016, or prejudge him and deny him a fair opportunity to defend against the particular crime charged, State v. Gowan, 2000 MT 277, ¶ 19, 302 Mont. 127, 13 P.3d 376.
¶71 As discussed, the evidence of Crider’s prior instances of abuse and harassment had little, if any, probative value to the issues at his trial. In contrast, the evidence created a substantial risk of swaying the jury to penalize Crider for his violent character or history of bad behavior. The prosecution used the evidence to portray Crider as a stalker and domestic abuser — a man who, as the prosecutor put it, “made a habit of abusing, harassing, and stalking his partner” in order “to get whatever he wants or to punish his partner for perceived infidelities.” In Sage, we agreed with the defendant that evidence of drug use at his house “likely painted him as either a person who gave ‘pot parties’ at his house, or was possibly a drug dealer.” Sage, ¶ 30. We concluded that, qualitatively, the erroneous admission of this evidence was not *214 harmless. Sage, ¶ 30. In my view, “the qualitative impact” of Crider’s history of violence and intimidation, Derbyshire, ¶ 54, was even more prejudicial than the evidence of drug use in Sage. There is a “reasonable possibility” that this evidence contributed to Crider’s conviction, and thus the admission of the evidence was not harmless. Sage, ¶ 30; see also Rogers, ¶ 44 (reaching the same conclusion where the State presented “highly inflammatory” evidence that Rogers had previously been convicted of rape and assault, but had gotten those convictions set aside; such evidence, we explained, “invited an opportunity for the jury to make sure Rogers would be punished when it deliberated on [the] crimes charged”).
CONCLUSION
¶72 In sum, I conclude that Crider did not properly preserve his Rule 404(b) claim for appellate review. However, because the Court has nevertheless reached the merits of that claim, I conclude that the evidence of Crider’s uncharged misconduct should not have been admitted under motive or absence of mistake or accident theories, and that the erroneous admission of this evidence was not harmless. Accordingly, under our precedents, Crider is entitled to a new trial. Derbyshire, ¶ 55; Sage, ¶ 43; Rogers, ¶ 46.
¶73 I dissent from the Court’s contrary holdings.

 M. R. Evid. 404(b) states: “Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.”

 The Court’s attempts to distinguish Keys are unpersuasive. First, the Court observes that Keys predates our decision in Eighteenth Judicial District Court. Opinion, ¶ 28. Yet, we did not expressly, or even implicitly, overrule the foregoing holding of Keys in Eighteenth Judicial District Court. Thus, the Court’s reason for noting the timing of these two decisions is unclear. Second, the Court points out that Keys’ prior acts were with a different victim, whereas Crider’s prior acts were with the same victim. Opinion, ¶ 28. That fact, however, was not the basis of our decision in Keys. Whether his prior acts were with the same victim or a different victim, we explained that Keys’ intent or motive was simply irrelevant: “Keys clearly intended to have sexual intercourse with N.B., and even if he intended to do this forcibly and without her consent, this criminal intent would be irrelevant if N.B. consented.” Keys, 258 Mont. at 317, 852 P.2d at 625. The Court, notably, does not refute the principle that motive is irrelevant where the issue, as here, is one of consent. Finally, although the Court’s analysis and holding under Issue 1 are premised on “the sexual acts,” the Court posits near the end of its discussion that Crider’s “motive to control or harass M.W.” was also relevant “to his motive to commit the offenses of PFMA and witness tampering.” Opinion, ¶ 28. Significantly, the Court fails to support this statement with any sort of analysis. The Court does not explain how Crider’s motive was logically relevant to prove the elements of PFMA and witness tampering and how this could be accomplished without a forbidden propensity inference.

 “A few states have adopted a specific rule to allow evidence of past acts of domestic violence, by the same defendant against the same victim, to be admitted in prosecutions involving domestic violence without worrying about the purpose for the evidence. In other words, a true exception to the propensity rule applies, and a defendant is not entitled to a limiting instruction.” Kenneth S. Broma, McCormick on Evidence vol. 1, § 190,1042 (7th ed., Thomson Reuters 2013) (footnote omitted). Montana does not have such a rule, although today’s decision effectively creates one through the expedient of re-labeling Crider’s propensity for domestic violence and intimidation as a “motive.”